**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

| | |
|---|---|
| IN RE | |
| GC LONDON KY INC., et al | CASE NO. 15-60463 |
| DEBTORS | |
| TAFT A. MCKINSTRY, Ch. 11 Trustee | PLAINTIFF |
| v. | ADV. NO. 17-6003 |
| B&H CONTRACTORS, LLC | DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Plaintiff Chapter 11 Trustee and the Defendant B&H Contractors, LLC's cross-motions for summary judgment. [AP ECF Nos. 35, 36 and 37.][1] The Plaintiff seeks recovery of certain prepetition and post-petition transfers related to financing provided by the Defendant to one or more of the jointly administered Debtors[2] pursuant to 11 U.S.C. §§ 547 and 549.[3] The Defendant also requests administrative expense treatment of the unpaid portion of the post-petition financing based on § 503(b).

The matter is fully briefed. [AP ECF Nos. 41, 42, 46, and 47.] A hearing was held on September 15, 2017, and the motions were taken under submission. For the reasons explained herein, the Plaintiff's Motion for Partial Summary Judgment [AP ECF No. 37 ("Plaintiff's

---

[1] References to the docket in this Adversary Proceeding appear as [AP ECF No. _ .] References to the docket in the Debtor's main bankruptcy case appear as [Bk. ECF No. _ .].

[2] The jointly administered Debtors are: *In re GC London KY Inc.,* Case No. 15-60463; *In re GC Georgetown KY Inc.* Case No. 15-50707; *In re GC Nicholasville KY Inc.*, Case No. 15-50708; *In re GC Lexington, KY Inc.*, Case No. 15-50709; *In re GC Egg Harbor NJ, Inc.*, Case No. 15-50710*; In re GC Delran NJ, LLC*, Case No. 15-50711; *In re GC Somerset KY Inc.*, Case No. 15-60466.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Motion")] is granted in part and denied in part. The Defendant's Motion for Summary Judgment and the request for administrative expense priority are denied. [AP ECF No. 35 ("Defendant's Motion").]

I.     **RELEVANT FACTS AND PROCEDURAL HISTORY.**

The following facts are supported by the record and/or are undisputed.

**A.  The Debtors.**

The Debtors are operators of Golden Corral franchises that filed chapter 11 petitions on April 10, 2015. The cases are administratively consolidated under the lead case of *In re GC London KY, Inc.*, Case No. 15-60463. The Debtors are owned by Djenane and Dexter Bartholomew (collectively, the "Bartholomews", or individually "Djenane" or "Dexter"). The Plaintiff was appointed as the chapter 11 trustee in early December 2015 due to the Bartholomews' mismanagement of the Debtors' operations. [*See* Bk. ECF Nos. 333, 339.]

**B.  The Prepetition Financing.**

The Defendant is a commercial construction company owned by Matthew Halloran. [AP ECF No. 35-2 ¶¶ 1-2 ("Halloran Certification").] In August 2013, the Defendant began performing contracting services for the Bartholomews on a project unrelated to the Debtors. [Halloran Certification ¶ 3.] By September 2014, the Bartholomews owed the Defendant in excess of $125,000.00 on this project. [Halloran Certification ¶ 4.]

In November 2014, Djenane approached Halloran for a loan to help their struggling Golden Corral franchises. [*Id.* ¶¶ 5-6.] The Defendant was not in the business of lending money [*see* AP ECF No. 24 at 10], but Halloran thought the loan might make it more likely the Bartholomews would repay the existing debt on the other project. [Halloran Certification ¶ 6.] Therefore, on November 17, 2014, the Defendant loaned $75,000.00 to GC Egg Harbor NJ, Inc., one of the Debtors ("GC Egg Harbor"). [*Id.* ¶ 8.] GC Egg Harbor repaid $25,000.00 to the

Defendant on December 8, 2014, but the balance of the loan remains outstanding. [*Id.* ¶¶ 9-10.] A chart summarizing the history of this loan, as well as other relevant loans, is attached as Exhibit A.

The Bartholomews again contacted Halloran for financing assistance on April 2, 2015. The Debtors needed $60,000.00 to cover food purchases and $90,000.00 for payroll. [*Id.* ¶ 11.] Halloran caused the Defendant to wire transfer these amounts directly to the food vendor and the payroll disbursing agent on April 2. [*Id.* ¶ 13.] GC Egg Harbor repaid $40,000.00 of this loan on April 3, 2015, and $25,000.00 on April 6, 2015. [Halloran Certification, Exhibit H, AP ECF No. 35-3 at 9-10.] The remaining $85,000.00 was repaid on April 7, 2015, by DB Somerset Realty Ky, Inc., an entity affiliated with the Bartholomews. [Halloran Certification ¶¶ 11, 14.]

The final prepetition loan was made on April 9, 2015, when the Defendant issued a check to GC Egg Harbor for $25,000.00 to pay food vendors. [Halloran Certification, Exhibit K, AP ECF No. 35-3 at 21.] This loan was repaid post-petition on April 16, 2015.

**C. The Post-Petition Financing.**

Halloran continued to loan money to the Debtors after the bankruptcy petition was filed, making the last loan on November 13, 2015. Halloran claims, and the Plaintiff does not dispute, that the Defendant did not learn about the bankruptcy cases until December 2, 2015, through an online search. [Halloran Certification ¶ 19.]

The total post-petition financing was $491,714.31. Nothing about the loans is consistent. [*See* Exhibit A.] Some loans were made by the Defendant, but Halloran and LG Enterprises, another entity affiliated with Halloran [Halloran Certification ¶ 23], also disbursed funds. Further, the recipients of the loans were not the same. Some loan proceeds went directly to a food vendor or the payroll disbursing agent. Other loan proceeds went to GC Egg Harbor or

Bartholomew Enterprises, Inc., an entity associated with the Bartholomews. [AP ECF No. 35-1 at 53, lines 6-16 ("Plaintiff Deposition").]

There are also inconsistencies with the repayments the Plaintiff seeks to recover. The loans initially were repaid within a few days, but as the months wore on the payments took longer and only partially covered the last disbursements. The total post-petition payments were $456,714.31, of which $284,714.31 was transferred from GC Egg Harbor ("Post-petition Payments"). The other $172,000.00 was repaid by Bartholomew Enterprises. The Plaintiff only seeks to recover the Post-petition Payments made by GC Egg Harbor.

**D. The Administrative Expense Claim.**

The Defendant filed the following proofs of claim against each of the Debtors ("B&H Claims"):

| Debtor | Case No. | Claim | Date | Amount |
| --- | --- | --- | --- | --- |
| GC Somerset KY, Inc. | 15-60466 | 21 | 05/23/16 | $110,000.00 |
| GC London KY, Inc. | 15-60463 | 39 | 09/26/16 | $110,000.00 |
| GC Lexington KY, Inc. | 15-50709 | 20 | 09/26/16 | $110,000.00 |
| GC Egg Harbor NJ, Inc. | 15-50710 | 26 | 09/26/16 | $110,000.00 |
| GC Delran NJ, LLC | 15-50711 | 11 | 09/26/16 | $110,000.00 |
| GC Nicholasville KY, Inc. | 15-50708 | 20 | 09/26/16 | $110,000.00 |
| GC Georgetown KY, Inc. | 15-50707 | 20 | 09/26/16 | $110,000.00 |

The B&H Claims were filed on a form titled "Request for Payment of Administrative Expense" and each indicate the claim is for "Money loaned." The Defendant attached a ledger report dated March 7, 2016, to each proof of claim, titled: "B&H Contractors Account QuickReport All Transactions" ("Ledger Report"). The sum of the entries on the Ledger Report equals $110,000.00. Exhibit A shows that $75,000.00 of the B&H Claims accrued prepetition. The balance of $35,000.00 arises from post-petition transactions.

4

**E. The Amended Complaint.**

The Plaintiff filed her Amended Complaint to A) Avoid and Recover Transfers and B) Disallow Certain Claims Against the Estate of the Jointly Administered Debtors on January 6, 2017. [AP ECF No. 4.] The Amended Complaint contains seven counts seeking to avoid and recover portions of the prepetition and post-petition transfers and disallow the Defendant's claim.

The Defendant raised the contemporaneous exchange for new value defense in § 547(c)(1) in its Answer. [AP ECF No. 18.] The Defendant later sought and was granted permission to amend the Answer to add the ordinary course of business defense pursuant to § 547(c)(2)(A) and the subsequent new value defense under § 547(c)(4). [AP ECF Nos. 43 and 56.]

Count III and Count IV of the Amended Complaint were dismissed with prejudice on the request of the Plaintiff. [AP ECF Nos. 33 and 40.] The remaining counts in the Amended Complaint are resolved in this Opinion.

**II.    JURISDICTION AND SUMMARY JUDGMENT STANDARD.**

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and venue is proper pursuant to 28 U.S.C. § 1409. This is also a core proceeding pursuant to 28 U.S.C. § 157(b).

When parties file cross-motions seeking summary judgment, each movant has the burden to establish the nonexistence of a material fact and entitlement to judgment. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007). The evidence, together with all permissible inferences, is construed in the light most favorable to the party opposing the motion. FED. R. BANKR. P. 7056 (incorporating FED. R. CIV. P. 56); *see*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response to a summary judgment motion, the nonmoving party must go beyond the allegations and denials in the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find" for the nonmovant. *Id.* at 252.

### III.  DISCUSSION.

#### A.  Count I:  The Plaintiff is Entitled to Recover the Post-petition Payments.

##### 1.  The Plaintiff Asserts the Post-petition Payments Satisfied Financing that Was Not Authorized Under § 364.

The Plaintiff seeks to recover the Post-petition Payments under § 549(a), which provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate –
> (1) That occurs after the commencement of the case; and
> (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
> (B) that is not authorized under this title or by the court.

11. U.S.C. § 549. The Defendant has the burden to prove the validity of the Post-petition Payments. FED. R. OF BANKR. P. 6001.

The Post-petition Payments satisfy § 549(a)(1), and § 549(a)(2)(A) is not relevant to this proceeding. The disagreement arises because the Plaintiff asserts the financing violates § 549(a)(2)(B) because it was not authorized pursuant to § 364. Section 364 contains the requirements for post-petition credit. Debt incurred in the ordinary course of business does not require court authorization and is eligible for administrative expense priority treatment. 11 U.S.C. § 364(a). But any other unsecured or secured credit must have court approval. 11 U.S.C. § 364(b)-(d).

The Defendant asserts the financing occurred in the ordinary course of the Debtors' business, so court approval was not required under § 364(a). In the alternative, the Defendant seeks *nunc pro tunc* approval of the financing as an administrative expense claim pursuant to § 364(b). *See* 11 U.S.C. § 105(a). If either is the case, the transfers are not recoverable under § 549(a).

### 2. The Defendant Has Not Proven the Post-petition Financing Occurred in the Ordinary Course of Business as Required by § 364(a).

A debtor-in-possession "may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(a). The Bankruptcy Code addresses actions in the "ordinary course of business" in several sections, but the phrase is not defined. *See, e.g.,* 11 U.S.C. §§ 363(c), 364(a), 547(c)(2)(B). The fact-intensive analysis generally looks at two tests, the horizontal dimension test and the vertical dimension test. *Gen. Elec. Capital Corp. v. Hoerner (In re Grand Valley Sport & Marine),* 143 B.R. 840, 855-56 (Bankr. W.D. Mich. 1992). *See also* 3 COLLIER ON BANKRUPTCY ¶ 364.02[1] (Alan N. Resnick and Henry J. Sommer eds., 16th ed. 2010).

Some courts apply only one of the tests and others apply both tests. *See, e.g., Rajala v. Langer (In re Lodge America, Inc.)*, 239 B.R. 580, (Bankr. D. Kan. 1999) (holding that the

7

horizontal dimension test is not appropriate for a § 365(a) analysis); *but see In re Poff Const., Inc.*, Case No. 7-89-00674, Civil Action No. 91-363-R, Chapter 11, 1991 U.S. Dist. LEXIS 20354 at *5-7 (W.D.Va. Aug. 19, 1991) (citing *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.*), 60 B.R. 612, 616-17 (Bankr. S.D.N.Y. 1986)) (applying both tests to a post-petition transaction in the context of § 364). The Defendant has not shown either test applies, so it is not necessary to decide whether to apply one test or both.

> **a. The Defendant Has Not Offered Sufficient Evidence to Satisfy its Burden Under the Horizontal Dimension Test.**

The horizontal test requires a comparison of the Debtors' business to other businesses in the Debtors' industry. *See Gen. Elec. Corp.*, 143 B.R. at 856; *see also Pillar Capital Holdings, LLC v. Williams (In re Living Hope Southwest Med. Servs., LLC)*, 509 Fed. Appx. 578, 583-84 (8th Cir. 2013). This test requires an inquiry into whether the conduct is typical for the Debtors' trade.

The record does not address lending practices in the restaurant business. The Defendant has offered no evidence to determine if other restaurants would engage in these transfers as part of their day-to-day operations. The only proof the Defendant could cite at oral argument is the certification from Djenane, but it does not address industry standards or customs regarding short term financing. [AP ECF No. 35-6.] Therefore, the Defendant has not satisfied its burden to prove the horizontal test for an ordinary course of business credit arrangement.

> **b. The Defendant Fails to Satisfy the Vertical Dimension Test Based on the Inconsistencies in the Credit Facility.**

"The vertical dimension or creditor's expectation test examines the debtor's transaction from the vantage point of a hypothetical creditor and inquires whether the transaction subjects a

8

creditor to economic risks of a nature different from those he accepted when he decided to extend credit." *In re Johns-Manville Corp.*, 60 B.R. at 617. The irregularities involved in the lending and repayment arrangement and problems with the Bartholomews' management of the Debtors, which ultimately resulted in appointment of the Plaintiff as the chapter 11 trustee, confirm the transactions were not ordinary. A reasonable interested party would not believe the economic risks were consistent with past risks. *See Gen. Elec. Corp.*, 143 B.R. at 856 (citing *In re C.E.N., Inc.*, 86 B.R. 303, 305 (Bankr. D. Me. 1988)).

The chart at Exhibit A highlights the many inconsistencies that show this was not one credit arrangement, but a jumble of loans and payments from and to multiple parties. The Defendant only made six of the fifteen post-petition loans. The others were made by Halloran or LG Enterprises. The amount of the loans varied, ranging from $5,000.00 to over $88,000.00. Also, there was no pattern to the timing of the loans, with gaps of 1 day to 26 days through July 1, and a long gap of 3.5 months until the next loan in October.

The irregularity of the repayments is even more troubling. The Plaintiff only seeks recovery of repayments made by GC Egg Harbor, which eliminates six of the sixteen loan repayments. The payor of one of the remaining ten payments (April 20) was not located in the record. The Debtors also repaid the Defendant for loans that Halloran issued. This structure exposes the Debtors to a risk of double payments because a payment to a party other than the lender would not eliminate the debt.

Any creditor would have raised issues with a credit facility that had so many irregularities and did not ensure payment of the lender. This is even more concerning in light of the allegations of mismanagement leveled against the Bartholomews throughout the case. [*See* Bk. ECF Nos. 143 and 264 (the Kentucky Department of Revenue moved to dismiss on June 3 and

9

October 1, 2015, because the Debtors' failed to timely pay sales taxes); Bk. ECF No. 292 (the United States Trustee's motion to convert that resulted in appointment of the chapter 11 trustee).]

Therefore, it is not possible to conclude the reasonable expectations of an interested party were consistent with the Debtors' ordinary course of business. The Defendant has not satisfied the vertical dimension test for an ordinary course of business credit arrangement.

### 3. Defendant's Request for Retroactive Approval Is Denied.

Section 364(b) requires advance approval for an extension of credit entitled to administrative expense priority treatment. 11 U.S.C. § 364(b). The Defendant admits it did not obtain court approval, so it seeks *nunc pro tunc* authorization. The Second Circuit in *In re American Cooler Co.* found that *nunc pro tunc* approval was justified if a court determines it would have authorized the loan and creditors were not harmed. 125 F.2d. 496, 497 (2d Cir. 1942). The lender must also act in good faith and without knowledge of the need to obtain bankruptcy court approval. *Id.*

The precedential value of *American Cooler* is diminished because it was determined under the Bankruptcy Act. *See Gen. Elec. Corp.*, 143 B.R. at 851. But there is still some value with its holding. *Id.*; *see also In re Imbody*, 104 B.R. 830, 834 (Bankr. N.D. Ohio 1989) (holding that a court's § 105(a) powers include the ability to grant retroactive approval of post-petition financing). That said, retroactive approval is not warranted in this case.

There is no evidence of bad faith, but the irregularities of the credit facility make it impossible to conclude the financing would have received court approval or creditors were not exposed to harm. The Defendant did show many or most of the payments went to pay legitimate obligations of the Debtors. But the Defendant's nontraditional financing facilitated the Debtors' commingling of funds from the different restaurants. [*See* Bk ECF No. 360-1 at 7 (confirming

commingling of the restaurants' accounts).] The Debtors were not substantively consolidated, so any payment of the obligations of one Debtor by another harm the creditors of the payor.

The irregularities regarding the amount and timing of the payments are not offensive standing alone. A debtor should only borrow funds when and if they are required. But it is impossible to conclude that a court would approve a credit facility that allowed payments to a party that is not the lender. This Court would not have approved the financing without clearly identifying the responsible parties and the obligations of each party. Thus, these facts do not merit the extraordinary relief requested.

The Defendant's financing does not satisfy § 364(b) without retroactive approval. Therefore, the Defendant has not shown the Post-petition Payments were authorized by the Bankruptcy Code or this Court. The Plaintiff is entitled to judgment under Count I in the amount of $284,714.31.

### B. Count II: The Plaintiff Is Entitled to Recover $40,000.00 in Prepetition Payments.

Count II seeks recovery of payments totaling $65,000.00 made on April 3 and April 6, 2015 (the "Prepetition Payments"). The parties agree the elements of a preferential transfer are satisfied as to the Prepetition Payments. 11 U.S.C. § 547(b). But the Defendant tries to prevent avoidance by raising three defenses: § 547(c)(1), a contemporaneous exchange for new value; § 547(c)(2), a transfer in the ordinary course of business; or § 547(c)(4), new value was provided. The Defendant has the burden of proof to show any defense applies. 11 U.S.C. § 547(g).

#### 1. The New Value Defense in § 547(c)(4) Protects $25,000.00.

On April 9, 2015, the Defendant made a new loan of $25,000.00 to GC Egg Harbor. The Plaintiff conceded at the September 15 hearing that the new value defense applies and the total

11

amount she seeks to recover under Count II is $40,000.00 (hereafter, the "Prepetition Payments" refers to this amount). [*See also* AP ECF No. 41 at 6 n.3.] For the reasons that follow, the Defendant has not satisfied its burden as to the other defenses, so the Plaintiff is entitled to judgment on Count II for $40,000.00.

### 2. The Prepetition Payments Were Not Contemporaneous Exchanges for New Value.

The contemporaneous exchange defense should encourage creditors to continue doing business with troubled creditors hoping they may avoid bankruptcy altogether. *In re Shelton Harrison Chevrolet, Inc.,* 202 F.3d 834, 837 (6th Cir. 2000) (citing *In re Jones Truck Lines, Inc.*, 130 F.3d 323, 326 (8th Cir. 1997)). A party asserting this defense must prove: (i) an intent to have a contemporaneous exchange; (ii) an actual contemporaneous exchange; and (iii) the debtor received new value. *Id.*

The Defendant describes the prepetition and post-petition transfers as repayments on short-term loans [Defendant's Motion at 20-21], which eliminates the § 547(c)(1) contemporaneous exchange defense. An agreement to repay a loan at a later date means that the transfer is not intended as, or actually is, contemporaneous. *See Sarachek v. Crown Heights House of Glatt, Inc. (In re Agriprocessors, Inc.)*, 521 B.R. 292, 311-12 (Bankr. N.D. Iowa 2014); *see also In re Fabric Buys of Jericho, Inc.*, 22 B.R. 1013, 1016 (Bankr. S.D.N.Y. 1982) (holding that the provision's legislative history shows Congress did not intend credit transactions to be contemporaneous exchanges). The Defendant also fails to identify any new value that the Debtors received in exchange for the Prepetition Payments. *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000) (holding that payment of an antecedent debt does not qualify as new value).

Therefore, § 547(c)(1) does not apply as a defense.

### 3. The Defendant Cannot Prove the Prepetition Payments Were Made in the Ordinary Course of Business.

The ordinary course of business defense to a preferential payment recovery action provides:

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms;

11 U.S.C. § 547(c)(2).

The Defendant only raises § 547(c)(2)(A) as a defense. Section 547(c)(2)(A) is referred to as the subjective test, which requires proof that the payment is ordinary in relation to the parties' business dealings. *Speco Corp. v. Canton Drop Forge (In re Speco Corp.)*, 218 B.R. 390, 397 (S.D. Ohio 1998). *See also* 5 COLLIER ON BANKRUPTCY ¶ 547.04[2][a][ii] (Alan J. Resnick and Henry J. Sommer eds., 16th ed. 2010).

But before addressing subsections (A) or (B) of § 547(c)(2), the Defendant must first prove the transfers were in the ordinary course of business of the Debtors and of the Defendant. The Defendant fails this requirement because it conceded that it is a contractor that does not make loans. [AP ECF No. 24 at 10.] Further, the Defendant provided no evidence to conclude the Debtors regularly obtained short-term financing and it is impossible to reach this conclusion from a review of the schedules and record in this proceeding. [*See* Bk. ECF No. 97.]

Even if the Defendant could meet this threshold inquiry, the four prepetition loans do not create a pattern that would satisfy the subjective test. *See In re Fred Hawes Organization, Inc.*, 957 F.2d 239, 244-45 (holding that the failure to make payments timely combined with the parties' short relationship supported finding that the transfers were not subjectively "ordinary.")

13

The first loan of $75,000.00 was made over four months before the three April loans and only $25,000.00 was repaid. The loans on April 2 bypassed the Debtors and were repaid quickly, although the majority of the debt was repaid by a third party. The April 9 loan was on the eve of bankruptcy and, like the April 2 loans, appeared more as emergency loans than anything that was regular for the Debtors.

The Defendant suggested the continuation of the loans post-petition helps prove the prepetition loans and repayments were ordinary course. It is hard to see how post-petition financing would satisfy the subjective test and the Defendant cites no cases to support this proposition. Even if post-petition activity might help prove this test, however, the irregularities already discussed regarding an ordinary course transaction under § 364(a) confirm there was nothing ordinary about the post-petition credit arrangement. *See* discussion *supra* at Part II.C.

### C. Count V: The B&H Claims Are Not Priority Claims.

The Plaintiff seeks summary judgment on Count V "for the purpose of clarifying that to the extent that B&H has a valid claim under Section 503(b) of the Bankruptcy Code arising after the Petition Date, that is only for the sum of $35,000 and does not include any sums owed as of the Petition Date." [Plaintiff's Motion at 1-2.] The Defendant's Motion included a request for administrative expense priority treatment of the B&H Claims. [Defendant's Motion at 21-26.] The record is sufficient to allow a decision on both issues.

#### 1. The Prepetition Portion of the B&H Claims Is Not Entitled to Administrative Expense Priority Treatment.

The Defendant agreed that the $75,000.00 prepetition portion of the B&H Claims is not entitled to administrative expense priority in its Response to the Plaintiff's Motion. [AP ECF No. 42 at 17.] Therefore, the Plaintiff's request for partial summary judgment on Count V is granted.

14

## 2. The Post-Petition Portion of the B&H Claims Is Not Entitled to Administrative Expense Priority Treatment.

Administrative expense claims are "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The terms "actual" and "necessary" are strictly construed to maximize payments to all creditors. *See Zurich Am. Ins. Co. v. Lexington Coal Co., LLC. (In re HNRC Dissolution Co.)*, 371 B.R. 210, 224-25 (E.D. Ky. 2007), *aff'd, Zurich Am. Ins. Co. v. Lexington Coal Co. LLC (In re HNRC Dissolution Co.*), 536 F.3d 683 (6th Cir. 2008). An expense that does not benefit an estate is not actual or necessary. *Zurich Am. Ins. Co.*, 371 B.R. at 225.

The post-petition B&H Claims do not merit administrative expense priority treatment for reasons already addressed in this Opinion. *See* discussion *supra* at Parts II.B and II.C. The inconsistent nature of the financing and repayment makes it difficult to conclude the payments were made to preserve the Debtors' estates. Further, the $35,000.00 balance arose from a $50,000.00 loan on October 15, 2015, and a $25,000.00 loan on November 13, 2015. [*See* Exhibit A; *see also* Halloran Certification, Exhibit S, AP ECF No. 35-5 at 3 and 7.] The Defendant's proof shows that "Halloran personally" made these loans, not the Defendant. [Halloran Certification, Exhibit O, AP ECF No. 35-3 at 31.] The Defendant is not entitled to an administrative expense priority if it is not the real holder of the claim.

Therefore, the Defendant has not established how these facts and circumstances justify allowing administrative expense priority for the $35,000.00 post-petition portion of the B&H Claims. 11 U.S.C. § 503(c)(3). The Defendant's request for administrative expense priority is denied.

**D.  Count VI:  The Defendant Only Has One $110,000.00 Claim.**[4]

The Plaintiff seeks a determination that the B&H Claims are duplicative.  [Plaintiff's Motion at 2.]  The Defendant confirmed at the September 15 hearing that it does not seek a recovery in excess of $110,000.00.  The outstanding issue is whether one, some or all of the Debtors are obligated to pay any claim due.  The Plaintiff explained at the September 15 hearing that the intent of Count VI is only to confirm she is dealing with one $110,000.00 claim, and not a $770,000.00 obligation.

Therefore, the Plaintiff is entitled to judgment on Count VI.  The Defendant may not recover more than $110,000.00 from any of the Debtors on the B&H Claims.  Which Debtor or Debtors are responsible for payment of any allowed claim is not the subject of Count VI or decided by this Opinion.

**E.  Count VII:  Section 502(d) Would Apply If Relevant.**

Count VII seeks enforcement of § 502(d) to prevent payments to the Defendant on any allowed claim until the Defendant pays amounts that are recovered through the Complaint.  [Plaintiff's Motion at 2.]  The Defendant only objected to this relief because it denies liability on Count I and Count II.  The Defendant conceded at the September 15 hearing that § 502(d) would prevent payment of an allowed claim until the Defendant pays any judgment on Count I or Count II.  Therefore, the Plaintiff is entitled to judgment on Count VII.

**IV.  CONCLUSION.**

Based on the foregoing, the Defendant's Motion for Summary Judgment and request for administrative expense priority treatment are DENIED and the Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.  The Plaintiff is entitled to

---

[4] Denial of administrative expense priority diminishes the relevance of Count VI and Count VII.  Regardless, a decision is made to confirm all matters are addressed.

16

recover $284,714.31 in Post-petition Payments under Count I and $40,000.00 in Prepetition Payments pursuant to § 550(a).  The Plaintiff is also granted judgment on Counts V, VI and VII.

    A separate judgment shall be entered contemporaneously with this Memorandum Opinion.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Wednesday, October 11, 2017
(grs)

# EXHIBIT A

| Loan Date | Transferor | Transferee | Record location | Amount | Pymt Date | Payor | Payee | Record location | Reference | Amount | Ttl To/(from) D'or |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Pre-petition** | | | | | | | | | | | |
| 11/17/14 | Defendant | GC Egg Harbor | Exh. C, AP ECF No. 35-2 at 17 | $75,000.00 | 12/15/14 | GC Egg Harbor | Defendant | Exh. D, AP ECF No. 35-2 at 19. | **Count II** | $25,000.00 | ($50,000.00) |
| 04/02/15 | Defendant | MBM Corporation (Food) | Exh. G, AP ECF No. 35-3 at 6 | $60,000.00 | 04/03/15 | GC Egg Harbor | Defendant | Exh. H, AP ECF No. 35-3 at 9 | **Count II** | $40,000.00 | |
| 04/02/15 | Defendant | Charter HR (Payroll) | Exh. G, AP ECF No. 35-3 at 4 | $90,000.00 | 04/06/15 | GC Egg Harbor | Defendant | Exh. H, AP ECF No. 35-3 at 10 | **Count II** | $25,000.00 | |
| | | | | $150,000.00 | 04/07/15 | DB Somerset | Defendant | Exh. H, AP ECF No. 35-3 at 11 | | $85,000.00 | |
| 04/09/15 | Defendant | GC Egg Harbor | Exh. K, AP ECF No. 35-3 at 21 | $25,000.00 | | | | | | $150,000.00 | ($75,000.00) |
| Ttl Prepetition | | | | $250,000.00 | | | | | | $175,000.00 | ($75,000.00) |
| **Post-Petition** | | | | | | | | | | | |
| 04/16/15 | Defendant | Charter HR (Payroll) | Exh. Q, AP ECF No. 35-3 at 35 | $25,000.00 | 04/16/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; Exh. S, AP ECF No. 35-4 at 15 | **Count I \*** | $25,000.00 | $25,000.00 |
| 04/16/15 | LG Enterprises | Charter HR (Payroll) | Exh. Q, AP ECF No. 35-3 at 37 | $15,000.00 | 04/17/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; AP ECF No. 37 Exh. 1 | **Count I** | $25,000.00 | $25,000.00 |
| 04/16/15 | Halloran | Charter HR (Payroll) | Exh. Q, AP ECF No. 35-3 at 39 | $15,000.00 | 04/17/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; AP ECF No. 37 Exh. 1 | **Count I** | $15,000.00 | $25,000.00 |
| 04/16/15 | Halloran | Charter HR (Payroll) | Exh. Q, AP ECF No. 35-3 at 41 | $5,000.00 | 04/17/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; AP ECF No. 37 Exh. 1 | **Count I** | $5,000.00 | |
| 04/16/15 | Defendant | MBM Corporation (Food) | Exh. Q, AP ECF No. 35-3 at 43 | $88,714.31 | 04/20/15 | GC Egg Harbor** | Defendant | Exh. O, AP ECF No. 35-3 at 31 | **Count I** | $88,714.31 | $25,000.00 |
| 04/30/15 | Defendant | GC Egg Harbor | Exh. R, AP ECF No. 35-3 at 46-47 | $36,000.00 | 05/05/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; Exh. S, AP ECF No. 35-4 at 16 | **Count I** | $36,000.00 | |
| 05/15/15 | Defendant | GC Egg Harbor | Exh. R, AP ECF No. 35-3 at 48-49 | $30,000.00 | 05/20/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; Exh. S, AP ECF No. 35-4 at 24 | **Count I** | $30,000.00 | $25,000.00 |
| 06/10/15 | Defendant | GC Egg Harbor | Exh. R, AP ECF No. 35-4 at 1-2 | $75,000.00 | 06/15/15 | Bartholomew Entr. | Defendant | Exh. O, AP ECF No. 35-3 at 31 | (Note 1) | $25,000.00 | ($25,000.00) |
| 06/11/15 | Halloran | GC Egg Harbor | Exh. O, AP ECF No. 35-3 at 31 | $7,000.00 | 06/22/15 | Bartholomew Entr. | Defendant | Exh. O, AP ECF No. 35-3 at 31 | (Note 1) | $25,000.00 | $25,000.00 |
| 06/11/15 | Halloran | GC Egg Harbor | Exh. O, AP ECF No. 35-3 at 31 | $20,000.00 | 06/15/15 | Bartholomew Entr. | Defendant | Exh. O, AP ECF No. 35-3 at 31 | (Note 1) | $50,000.00 | $18,000.00 |
| 06/30/15 | Halloran | Bartholomew Entr. | Exh. R, AP ECF No. 35-4 at 4-5 | $20,000.00 | 07/13/15 | Bartholomew Entr. | Defendant | Exh. O, AP ECF No. 35-3 at 31 | (Note 1) | $27,000.00 | $25,000.00 |
| 07/01/15 | Defendant | Bartholomew Entr. | Exh. S, AP ECF No. 35-4 at 34-36 | $40,000.00 | 07/17/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 35-3 at 31; AP ECF No. 37 Exh. 2 | **Count I** | $20,000.00 | $25,000.00 |
| 07/01/15 | Halloran | Bartholomew Entr. | Exh. S, AP ECF No. 35-4 at 34-36 | $40,000.00 | 08/17/15 | Bartholomew Entr. | Defendant | Exh. O, AP ECF No. 35-3 at 31 | (Note 1) | $25,000.00 | $5,000.00 |
| 10/15/15 | Halloran | Bartholomew Entr. | Exh. S, AP ECF No. 35-5 at 4 | $50,000.00 | 08/17/15 | Bartholomew Entr. | Defendant | Exh. O, AP ECF No. 35-3 at 31 | (Note 1) | $25,000.00 | ($10,000.00) |
| 11/13/15 | Halloran | GC Egg Harbor | Exh. S, AP ECF No. 35-5 at 7 | $25,000.00 | 11/03/15 | GC Egg Harbor | Defendant | Exh. O, AP ECF No. 37 Exh. 3 | **Count I** | $25,000.00 | ($35,000.00) |
| Ttl Post-petition | | | | $491,714.31 | | | | | | $456,714.31 | ($35,000.00) |
| | | | | | | | | | Paid by Bartholomew Entr. (≤ Note 1) | $172,000.00 | |
| | | | | | | | | | **Total COUNT I** | **$284,714.31** | |
| Total Pre/Post-petition | | | | $741,714.31 | | | | | | $631,714.31 | ($110,000.00) |
| | | | | | | | | | | | **(COUNT V/VI/VII)** |

Note 1: These payments were made by Bartholomew Enterprises, so the Plaintiff admits it is not entitled to recovery from the Defendant.
* This is the post-petition repayment of the April 9 loan.
** The specific payor was not apparent from the record, but the Defendant has not disputed that the Debtor paid this transfer.